**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Grossenbach, ) | CV 25-00477-TUC-JGZ (MAA) |
| ) | |
| Plaintiff, ) | REPORT AND RECOMMENDATION |
| ) | |
| vs. ) | |
| ) | |
| Arizona Board of Regents; et al., ) | |
| ) | |
| Defendants. ) | |

Pending before the court is a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), filed on October 17, 2025, by the defendants Arizona Board of Regents ("ABOR"); Douglas Goodyear, named in his official capacity as ABOR's Chair; and Suresh Garmella, named in his official capacity as the University of Arizona's President ("the defendants"). Doc. 16. The plaintiff filed a response on October 30, 2025. Doc. 17. The defendants filed a reply on November 6, 2025. Doc. 18.

The motion was referred to the Magistrate Judge for a report and recommendation. Doc. 8.

The plaintiff in this action, Daniel Grossenbach, founded an organization named SaveCFSD, through which he advocates "for truth, trust, and transparency within Catalina Foothills School District 16 ['CFSD']." Complaint, Doc. 1, ¶ 67. He founded this organization because he believes the CFSD is acting contrary to his "sincerely held religious beliefs" by "secretly surveying children about their gender and sexuality, pushing radical

1  gender ideologies upon those students, and unconscionably and intentionally keeping that
2  information from parents." Doc. 1, ¶¶ 2, 5.

3      Grossenbach was employed as an adjunct professor at the University of Arizona.
4  Complaint, Doc. 1, ¶ 53. On November 30, 2023, he was informed that his teaching contract
5  would not be renewed. Doc. 1, ¶ 143. Grossenbach believes that his employment was
6  discontinued because the University received complaints about his advocacy with
7  SaveCFSD.

8      Grossenbach filed a Complaint in this court on August 22, 2025. Doc. 1. He claims
9  the defendants' actions violate (I) Title VII of the Civil Rights Act of 1964, (II) the free
10 speech clause of the First Amendment, (III) the free exercise clause of the First Amendment,
11 (IV) the free speech clause of the First Amendment by retaliation, (V) the equal protection
12 clause of the Fourteenth Amendment, and (VI) the Arizona public records law. Doc. 1, pp.
13 50, 52, 55, 57, 60, 63.

14     On October 17, 2025, the defendants filed the pending motion to dismiss for failure
15 to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Doc. 16. The motion should be granted
16 as it relates to Grossenbach's claim under the Arizona public records law. The motion
17 should be otherwise denied. His Title VII administrative charge was timely filed under the
18 doctrines of estoppel and equitable tolling as alleged in the Complaint. The Eleventh
19 Amendment does not bar his Constitutional claims against the State pursuant to *Ex parte*
20 *Young*, 209 U.S. 123, 28 S.Ct. 441 (1908).

21

22     <u>Discussion</u>

23     "A Rule 12(b)(6) motion tests the legal sufficiency of the claim." *Cook v. Brewer*,
24 637 F.3d 1002, 1004 (9th Cir. 2011). The claim must allege a legally cognizable theory of
25 relief and include factual allegations sufficient to support that theory. *Hinds Investments,*
26 *L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

27

28

  Where the defendant uses Rule 12(b)(6) to raise a statute of limitations defense, the court may dismiss the claim only if "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

  When analyzing the motion, "all factual allegations in [the plaintiff's] complaint are taken as true and all reasonable inferences are drawn in his favor." *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

Count I: Title VII

  The defendants argue first that the Title VII claim must be dismissed because Grossenbach did not timely exhaust his administrative remedies. They explain that in Arizona a prospective plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory employment action. Doc. 16, pp. 3-4 (*citing, inter alia, Cox v. Glob. Tool Supply LLC*, 629 F. Supp. 3d 963, 971, n. 2 (D. Ariz. 2022) ("In deferral states [like Arizona], the deadline for a complainant to file [his] Title VII claim with the EEOC is extended from the ordinary 180 days to 300 days after the challenged practice, provided the complainant first initiates proceedings with the [state] agency.")); *see also Delaware State Coll. v. Ricks*, 449 U.S. 250, 256, 101 S. Ct. 498, 503 (1980) (The charge accrues when the "alleged unlawful employment practice occurred" pursuant to 42 U.S.C.A. § 2000e-5(e)(1).).

  In this case, Grossenbach was informed on November 30, 2023, that his employment contract would not be renewed. Doc. 16. According to the defendants, his 300 days started on that date and expired on September 25, 2024. Doc. 16, p. 4. They assert that he filed his ACRD (Arizona Civil Rights Division) charge on January 9, 2025, and his EEOC (Equal Employment Opportunity Commission) charge on January 22, 2025. Doc. 16, p. 4. Accordingly, the defendants argue that the claim must be dismissed for failure to properly exhaust administrative remedies. The court does not agree. Assuming without deciding that Grossenbach's Title VII charge accrued on November 30, 2023, when he was told his contract would not be renewed, the start of the limitation period was postponed under the

doctrines of estoppel and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").

"Equitable tolling focuses on whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (punctuation modified). "Equitable estoppel, on the other hand, focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Id*.

In his Complaint, Grossenbach describes when and how he was informed that his teaching contract would not be renewed:

In November of 2023, Grossenbach was approached by a publisher that wanted him to author a college textbook about ethics, his area of expertise. Doc. 1, ¶ 138. Grossenbach contacted Angela L. Hackett, the Assistant Director of the School of Government & Public Policy, hoping to set up a meeting to discuss the project. Doc. 1, ¶ 139. A meeting was set up at the behest of Dr. Edella Schlager, the Director of the School of Government & Public Policy, but Schlager did not intend to discuss the textbook project. Doc. 1, ¶¶ 86, 140, 141.

At the meeting, held on November 30, 2023, Schlager informed Grossenbach that his teaching contract would not be renewed. Doc. 1, ¶ 143. Grossenbach was told that "the University had decided to hire a full-time faculty member to teach [his] ethics course instead of an adjunct professor." Doc. 1, ¶ 144. Grossenbach initially believed the proffered explanation, but he later became skeptical. Doc. 1, ¶¶ 145-146. Consequently, he "submitted a public records request for documents and emails associated with the University's decision to not renew [his] teaching contract." Doc. 1, ¶ 150.

Grossenbach later saw that "the University had posted an advertisement soliciting resumes for two *adjunct professor* positions at the School of Government & Public Policy

to teach ethics, which [he] was well qualified to teach and had been teaching prior to his unlawful termination." Doc. 1, ¶ 156 (emphasis added). It appeared that the University was not hiring a full-time faculty member to teach these courses as he had been told. Doc. 1, ¶ 157.

Over the next seven months, Grossenbach sent a number of messages to the University seeking a substantive response to his public records request. Doc. 1, ¶¶ 151-173. Eventually he retained legal counsel, who sent the University a demand letter requesting the records. Doc. 1, ¶ 175; Doc. 1-16, p. 1. Grossenbach finally received the records on July 26, 2024, after what he calls "a 239-day campaign of delay and deception." Doc .1, ¶¶ 150, 151, 176. The records contain no negative performance reviews, but they do contain three anonymous complaints. Doc. 1, ¶ 181. Those complaints accused Grossenbach of "creat[ing] a hostile environment for transgender and LGBTQ students" in connection with his SaveCFSD activities, among other things. Doc. 1, ¶¶ 80, 122, 131. Grossenbach asserts that "[t]he furnished public records revealed emails which contain evidence of Defendants' religious discrimination, retaliation, and [his] unlawful termination from the University." Doc. 1, ¶ 180.

Taking the allegations in the plaintiff's Complaint as true and drawing all reasonable inferences in his favor, the court concludes that a reasonably prudent person would not have known of the existence of his claims until July 26, 2024, when he received the documents pursuant to his public records request. *See Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). Prior to that date, Grossenbach would have known *what* happened but not *why* it happened. And without knowing *why* it happened, he would not have known that an "unlawful employment practice [had] occurred" and could not have raised a meaningful[1] administrative charge. *See* 42 U.S.C.A. § 2000e-5(e)(1); *see also*

---

[1] The Arizona Civil Rights Division asks prospective claimants to specify the "categories" that apply to their employment complaint: "Race, Color, National Origin, Religion or Creed, Sex/Gender, Age, Disability, Genetic Information, or Retaliation." https://www.azag.gov/complaints/civil-rights.

*Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985) ("The time period for filing a complaint of discrimination begins to run when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights."). The limitation period was tolled until Grossenbach received his employment documents. *See, e.g., Sterrett v. Mabus*, 2013 WL 593752, at *5 (S.D. Cal. Feb. 15, 2013) ("Because the [First Amended Complaint's] factual allegations suggest that Sterrett did not realize the employment decision was the result of gender discrimination until her discovery of the similarly situated male in July 2009, the Court finds tolling is sufficiently pled.").

Furthermore, Grossenbach presents allegations from which one may conclude that the defendants took actions to prevent Grossenbach from discovering his claims by slow-walking his public records request and by falsely telling him that his contract would not be renewed because the University was going to hire a full-time faculty member to teach those classes. Taking the allegations in the Complaint as true and drawing all reasonable inferences in his favor, the court finds that the defendants knew the true circumstances surrounding the adverse employment action and falsely represented them to Grossenbach intending that he rely on those false representations. The court further finds that Grossenbach was ignorant of the true facts and reasonably relied on the defendants' representations to his detriment. *See Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051-1052 (9th Cir. 2008) (listing the equitable estoppel factors required under California law and "not inconsistent with federal common law.").

The start of the filing period was delayed until July 26, 2024, under the doctrines of estoppel and equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982). The defendants assert that Grossenbach's EEOC charge was filed on January 22, 2025, which was 180 days later. Doc. 16, p. 4; Doc. 1, ¶¶ 192-3. The EEOC charge was filed within the 300-day limitation period. "[T]he running of the statute is [not] apparent on the face of the complaint." *See Huynh v. Chase Manhattan Bank*, 465

F.3d 992, 997 (9th Cir. 2006). Accordingly, the defendants' motion to dismiss on this issue should be denied.

The defendants assert that the EEOC itself dismissed Grossenbach's charge because it was filed too late. Doc. 16, p. 5. The dismissal notice states as follows: "The EEOC is closing this charge because your charge was not filed within the time limits under the law; in other words, you waited too long after the date of the alleged discrimination to file your charge." *Id*. The defendants present no argument addressing how much deference this court should show the decision of the EEOC. They simply state that "this Court may consider attachments to the Complaint and draw all reasonable inferences in the plaintiff's favor." *Id*.

The court concludes that it need not give the EEOC's dismissal notice any special deference. It does not appear from the notice that the EEOC considered the doctrines of estoppel and equitable tolling. And even if it did, the defendants present no argument that the EEOC has special expertise in this area of the law. *See Lee v. Sullivan*, 787 F. Supp. 921, 937 (N.D. Cal. 1992) ("Thoughtful deference to agency determinations is appropriate only as to those matters as to which the agency has a particular expertise."); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413, 144 S. Ct. 2244, 2273 (2024) ("[C]ourts need not . . . defer to an agency interpretation of the law simply because a statute is ambiguous.").

In their reply brief, the defendants argue that even if Grossenbach could not discover his claim until July 26, 2024, he still could have filed his charge of discrimination before the 300-day deadline on September 25, 2024, and his failure to do so is fatal to his Title VII claim. Doc. 18, p. 3. They assert that the plaintiff "fails to point to any extraordinary circumstance that prevented him from filing a timely charge." *Id*.

The defendants cite no case law in support of their theory of equitable tolling. And, the court finds it does not accord with the rationale behind the doctrine, which is employed to "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (punctuation modified), *aff'd and remanded sub nom*. *United States v. Wong*, 575 U.S. 402, 135 S. Ct. 1625 (2015); *see also*

*Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004) ("California courts apply equitable tolling to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.") (punctuation modified); *see also Smith v. Davis*, 953 F.3d 582, 601 (9th Cir. 2020) (en banc) (Habeas petitioner would be entitled to the full one-year limitation period but only if he acted diligently after tolling ended.).

The defendants further argue that Grossenbach "fails to state a Title VII claim against [the Arizona Board of Regent's] Chair, Douglas Goodyear, and the University's President, Suresh Garmella" because Title VII only allows an action against the *employer* and "does not provide for the individual liability of an employer's officers and employees." Doc. 16, pp. 5-6.

The Complaint, however, does not name Goodyear or Garmella as defendants in their individual capacity. Doc. 1, p. 1. They are named in their official capacity. Doc. 17, p. 12. "Official-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 3105 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," which here is the employer. *Id.*; *see Ortez v. Washington Cnty., State of Or.*, 88 F.3d 804, 808 (9th Cir. 1996) (Claims against county employees in their individual capacities would be dismissed, but the plaintiff did state a Title VII claim against the employees in their official capacities and against Washington County, his employer.).

In their reply brief, the defendants argue that "Congress did not intend to impose individual liability on employees" in the Title VII statutory scheme Doc. 18, p. 4. The court agrees. But a suit against a person in his official capacity does not impose "individual liability" on that person and does not violate Congress's intent.

The defendants direct the court's attention to the case *Taylor v. ScottPolar Corp.*, 995 F. Supp. 1072, 1079 (D. Ariz. 1998), where the court granted summary judgment to individual defendants sued in their official capacity because those claims were "unnecessarily repetitive" of the plaintiff's claims against the employer. Doc. 18, p. 5. This court agrees

- 8 -

that Title VII claims brought against individuals sued in their official capacity are repetitive of the plaintiff's claims brought against the employer, at least in some respects. And one might consider the plaintiff's Title VII claims against the individual defendants in their official capacity to be *unnecessarily* repetitive. But even if they were, the defendants provide no authority tending to show that being "unnecessarily repetitive" is a legitimate reason for dismissing a claim under Fed.R.Civ.P. 12(b)(6).

Counts II, III, IV, and V: Constitutional Claims

The defendants further argue that Grossenbach's Constitutional claims must be dismissed because actions against the State of Arizona are barred by the Eleventh Amendment. Doc. 16, p. 6. The Complaint does not name the State of Arizona as a defendant, but it names the Arizona Board of Regents ("ABOR"), which the defendants explain is an arm of the State for Eleventh Amendment purposes. Doc. 16, p. 6 (*citing Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016)).

"The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state." *Jensen v. Brown*, 131 F.4th 677, 696 (9th Cir. 2025). "Ordinarily, this protection extends to state instrumentalities and agencies, as well as state officials sued in their official capacity." *Id*. (punctuation modified). "But over a century ago, *Ex parte Young* held that Eleventh Amendment-linked sovereign immunity is not a barrier to suits against state officers where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's federal constitutional or statutory rights." *Id*. (*citing Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908)). "Under this principle, a plaintiff may seek prospective injunctive relief that governs the official's future conduct, but not retroactive relief that requires the payment of funds from the state treasury." *Id*.

In this case, Grossenbach seeks, among other things, a declaratory judgment that the defendants discriminated against him and reinstatement to his prior position. Doc. 1, pp. 65-67. A declaratory judgment that the defendants' actions violated the plaintiff's Constitutional

- 9 -

rights is "prospective relief" that is not barred by the Eleventh Amendment. *Jensen v. Brown*, 131 F.4th 677, 696 (9th Cir. 2025). Moreover, "reinstatement is a legitimate request for prospective injunctive relief" for the purposes of *Ex parte Young*. *Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 842 (9th Cir. 1997). The Eleventh Amendment does not bar Grossenbach's Constitutional claims.

The defendants further argue that the "Complaint fails to demonstrate a reasonable likelihood of future injury." Doc. 18, p. 9. And therefore he "lack[s] standing to seek prospective injunctive relief." *Id*. (*citing Bank of Lake Tahoe*, 318 F.3d 914, 918 (9th Cir. 2003) ("An award of prospective injunctive relief requires the plaintiff to demonstrate a reasonable likelihood of future injury."). The court concludes that even if Grossenbach failed to allege a "reasonable likelihood of future injury," as that phrase was used in *Bank of Lake Tahoe*, his claims still survive the defendants' motion to dismiss.

Grossenbach requests, among other things, a declaratory judgment and reinstatement. Those are remedies that the court can provide pursuant to *Ex parte Young*. He therefore has standing to assert his Constitutional claims. Put another way, Grossenbach claims a right to certain types of "prospective injunctive relief" that do not require him to allege a "reasonable likelihood of future injury" as that phrase was used in *Bank of Lake Tahoe*. *See also* Doc. 1, ¶¶ 25, 133, 195-212, 234, 252, 277, 294 (alleging that the controversy has not abated and Grossenback still suffers harm due to the defendants' actions and policies).

Count VI: The Arizona Public Records Statute, A.R.S. § 39-121.02

Finally, the defendants argue that Count VI, Grossenbach's claim that the defendants violated the Arizona public records statute, A.R.S. § 39-121.02, should be dismissed because he failed to comply with the notice-of-claim statute, A.R.S. § 12-821.01, and because the Eleventh Amendment bars claims asserted under state law against the State. Doc. 16, pp. 9-11.

In his response brief, "Grossenbach voluntarily withdraws and dismisses his claims under Count VI." Doc. 17, p. 19.

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order

GRANTING IN PART the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), filed by the defendants on October 17, 2025. Doc. 16. Count VI, alleging a violation of the Arizona public records statute, A.R.S. § 39-121.02, should be dismissed. The remainder of the motion should be denied. The Complaint alleges that Grossenbach's Title VII administrative claim was timely filed under the doctrines of estoppel and equitable tolling. The Eleventh Amendment does not bar his Constitutional claims against the State pursuant to *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908).

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation. If objections are not timely filed, the party's right to de novo review may be waived. The Local Rules permit the filing of a response to an objection. They do not permit the filing of a reply to a response without the permission of the District Court.

DATED this 21st day of November, 2025.

_____
Honorable Michael A. Ambri
United States Magistrate Judge